UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES M. LING,

                                    Plaintiff,

                                                          **DECISION AND ORDER**
                                                          10-CV-132-A

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                    Defendant.
_____

## <u>INTRODUCTION</u>

        Pending before the Court are cross-motions for judgment on the pleadings

(Dkt. Nos. 6, 7) that the parties have filed pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure ("FRCP").  Plaintiff James M. Ling commenced the

instant action pursuant to 42 U.S.C § 405(g) on February 18, 2010, seeking

review of a final determination of the Commissioner of Social Security (the

"Commissioner") denying Plaintiff disability insurance benefits under Title II of the

Social Security Act.  Plaintiff claims to be disabled due to lower back impairments

after a car accident in March 2003.  The Commissioner counters that substantial

evidence supports the denial of benefits and the finding that Plaintiff can perform

other work in the national economy.

The Court has deemed the motions submitted on papers pursuant to FRCP 78(b).  For the reasons below, the Court grants the Commissioner's motion and denies Plaintiff's cross-motion.

## PROCEDURAL HISTORY

Plaintiff filed an application for Social Security disability insurance benefits on February 7, 2007.  Plaintiff asserts an amended period of disability from March 19, 2003 through April 1, 2007.  His application was denied on July 27, 2007.  ALJ William Straub held an administrative hearing on Plaintiff's application on June 2, 2009.  In a decision dated June 18, 2009, ALJ Straub denied Plaintiff's application.  The Appeals Council denied Plaintiff's request for review on January 29, 2010.

## BACKGROUND

Plaintiff was born on January 14, 1977.  On March 19, 2003, Plaintiff sustained lower back injuries in a car accident.  Prior to the accident, Plaintiff was employed at UPS as a pre-loader, which involved heavy lifting.  Plaintiff did not work from the date of the accident, March 19, 2003, until April 2007, when Plaintiff opened a pizza parlor, where he still worked as of the date the action was commenced.  Plaintiff was twenty-six years old at the time of the accident.  He has at least a high school education and is able to communicate in English.

2

Soon after the accident, on May 20, 2003, Plaintiff was treated by Dr. Patrick J. Hughes, who opined that Plaintiff could walk for four hours and could not lift more than ten pounds.  (Tr. 112-14)[1].  In April 2004, he was treated by Dr. P. Jeffrey Lewis, Plaintiff's treating physician, who recommended surgery for him.  (Tr. 145).  Prior to surgery, images of Plaintiff's lumbar spine indicated minimal degenerative joint disease.  (Tr. 130, 134, 198).  In July 2004, Dr. Lewis performed two surgeries.  On March 2, 2005, Dr. Lewis indicated Plaintiff had good relief of pain, and the fusion was solid.

On April 12, 2005, Dr. Lewis indicated Plaintiff was getting along much better and that physical therapy had resolved the thoracic pain.  (Tr. 139).  He also agreed to increasing the amount of weight Plaintiff could lift so that he could return to work where Plaintiff was required to lift seventy pounds.  Id.  On August 22, 2005, Dr. Lewis indicated that Plaintiff complained of having more pain; however, a CT scan showed a good fusion, and an MRI showed "very little subtle abnormality with no significant findings such as significant disk herniation."  (Tr. 137-38).  He further indicated Plaintiff had chronic back pain but did not think there were other studies that would be helpful to Plaintiff.  Lastly, he recommended that Plaintiff should continue on total disability.  On October 11, 2005, Dr. Lewis indicated an MRI scan was unremarkable and that the fusion

---

[1]         "Tr." refers to the numbered pages of the administrative record filed with the Court as part of the Commissioner's answer.

looked normal.  (Tr. 136).  He also referred Plaintiff to a doctor for holistic pain

management, and stated there were no further surgical options for him but

recommended that he should continue on total disability.  Id.  On April 14, 2006,

Dr. Lewis wrote Plaintiff complained of chronic back pain and consequently was

unable to return to work or perform normal daily activities.  He also stated x-rays

indicated "excellent position of interbody cages and pedicle screws."  (Tr. 135).

Plaintiff alleges that his disability ceased in April 2007, when he opened a

pizza parlor, where he continued to work as of the date the action was

commenced.  On April 3, 2007, after the closed period of disability, Plaintiff

indicated he could not sit, bend, walk, lift or stand for a long period of time.  (Tr.

80-87).  On April 19, 2007, a consultative medical examination performed by Dr.

Fenwei Meng indicated Plaintiff had mild limitations with pushing, pulling,

standing, walking and going up stairs.  (Tr. 150-51).  Dr. Meng also noted Ling

had moderate limitations with bending, extension, twisting, and heavy lifting.  Id.

On April 19, 2007, Dr. Lewis also opined that Plaintiff was in stable condition

regarding his lumbar spine, stating he had an "excellent fusion."  Dr. Lewis also

prescribed Lortab for Plaintiff and indicated he would reevaluate Plaintiff once an

MRI was completed.  (Tr. 162, 184).  On June 27, 2007, Dr. Lewis stated an MRI

scan showed central disc herniation and annular tearing with bulges, but the neck

pain did not bother Plaintiff "all that much."  (Tr. 160, 182).  Dr. Lewis

recommended an EMG, which produced normal results in September 2007.  (Tr.

161, 181).  In the meantime, a July 25, 2007 residual functional capacity ("RFC")

assessment performed by a Disability Determination Services ("DDS") State

agency medical consultant indicated Plaintiff could: occasionally lift twenty

pounds; frequently lift ten pounds; stand and walk for a total of about six hours in

an eight-hour workday; sit for a total of about six hours; and had an unlimited

push and pull.  (Tr. 164-69).  Lastly, the July RFC assessment noted Plaintiff's

statement that Plaintiff could only stand, walk, and sit for up to thirty minutes did

not appear consistent with the medical records on file.

     Dr. Lewis confirmed the EMG of upper extremities was negative on

September 10, 2007.  (Tr. 181).  He further indicated Plaintiff did not really have

neck pain and that Plaintiff was not interested in cervical spine surgery.  Id.

Plaintiff appeared to have a very small disc herniation at C6-7.  Id.  According to

Dr. Lewis, Plaintiff was doing fairly well regarding the lumbar fusion but indicated

Plaintiff did not feel he could return to work at UPS.  On September 11, 2007, Dr.

Lewis filled out a lumbar spine RFC questionnaire indicating Plaintiff had several

limitations, such as the inability to: walk more than two city blocks without rest or

severe pain; sit for more than ten to fifteen minutes before needing to get up; and

stand at one time for more than thirty minutes before needing to sit down.  He

further opined that Plaintiff needed to include ten to fifteen minute walks every

thirty minutes during an eight-hour workday, that Plaintiff needed "a job that

permits shifting positions at will from sitting, standing or walking," and that Plaintiff

would need to take unscheduled breaks for fifteen to thirty minutes five to ten times a day during an eight-hour workday.  He also indicated Plaintiff could frequently lift less than ten pounds, occasionally lift ten pounds, and never lift over twenty pounds.  Moreover, according to Dr. Lewis, Plaintiff could rarely twist, stoop, crouch, climb ladders or stairs, and was likely to be absent from work for more than four days per month as a result of Plaintiff's limitations.  (Tr. 177-80). On March 6, 2008, Dr. Lewis stated Plaintiff was getting along relatively well and was denied Social Security disability.  (Tr. 193).  He opined that there were no further surgical treatments to recommend for Plaintiff; also, he noted an excellent fusion and benefit from the surgery.  He then discharged Plaintiff from his follow up.

On February 5, 2009, Dr. Lewis was asked to comment on the degree of Plaintiff's disability.  (Tr. 208).  He indicated he did not consider Plaintiff disabled because he was able to run a business.  Id.  On February 10, 2009, Dr. Lewis wrote that Plaintiff had two lumbar surgeries during July 2004, and that Plaintiff was unable to return to his heavy job at UPS.  He further opined that Plaintiff would be unable to do any further heavy type work.  (Tr. 209).  During the June 2, 2009 administrative hearing, Plaintiff stated he had pain every day.  He further indicated doctors said bone growth and everything around the fusion was good, but Plaintiff did not feel he could lift or bend like he used to.  He stated he tries to lift only around thirty pounds and works around six hours a day.  In running his

business, Plaintiff supervises employees, deals with customers over the phone, and orders supplies.  Moreover, he stated there are no other medical records that should be included in the file.

## DISCUSSION

This Court has jurisdiction to hear claims based on denial of Social Security benefits and may set aside the Commissioner's decision only if it is based upon legal error or his factual findings are not supported by substantial evidence.  See 42 U.S.C § 405(g).  "Substantial evidence" in the context of a Social Security case is "more than a mere scintilla" and evidence which "a reasonable mind might accept as adequate to support a conclusion."  See Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

The Social Security regulations set forth a five-step process to adjudicate disability claims.  See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers whether Plaintiff is currently engaged in substantial gainful activity.  If not, the Commissioner then considers whether Plaintiff has a "severe impairment," which significantly limits Plaintiff's physical or mental ability to do basic work activities.  Third, if Plaintiff has such an impairment, the Commissioner considers whether Plaintiff has a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations.

7

If Plaintiff has a listed impairment, the Commissioner will find Plaintiff disabled. However, if Plaintiff does not have a listed impairment, the Commissioner must next determine whether Plaintiff possesses the RFC to perform his past relevant work.  Lastly, if Plaintiff is unable to perform past relevant work, the Commissioner determines whether Plaintiff is capable of performing any other work.

Plaintiff has the burden on the first four steps of the evaluation, and if Plaintiff establishes Plaintiff is incapable of performing past relevant work, the burden then shifts to the Commissioner to determine whether Plaintiff is capable of performing other work which exists in significant numbers in the national economy.  See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

Here, the ALJ applied the five-step analysis in reaching his disability determination.  (Tr. 7-13).  The ALJ found that during the period at issue, March 19, 2003 to April 1, 2007: (1) Plaintiff did not engage in substantial gainful activity; (2) Plaintiff suffered severe impairments: back herniation and surgery; (3) Plaintiff did not have an impairment or combination of impairments meeting or medically equaling a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had the RFC to perform at least sedentary and up to the full range of light work as defined in 20 C.F.R. 404. § 1567(b), with a less than twelve month period of recuperation for surgery; and (5) Plaintiff was unable to perform his past relevant work as a UPS pre-loader; however, considering Plaintiff's age,

education, work experience, and RFC, there were jobs that existed in significant

numbers in the national economy that Plaintiff could have performed.  From the

date of surgeries in July 2004 until March 2, 2005, the ALJ found Plaintiff would

not have been able to work.  (Tr. 11).  However, after a March 2, 2005 visit to Dr.

Lewis, where Dr. Lewis indicated Plaintiff had good relief of pain and the fusion

was solid, the ALJ determined Plaintiff was no longer disabled and could perform

"at least sedentary and up to the full range of light work" as defined in 20 C.F.R. §

404.1567(b)."


I.      **The ALJ's Decision Was Based on Substantial Evidence.**

The ultimate finding of whether Plaintiff is disabled is reserved to the

Commissioner.  See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); 20 C.F.R. §

404.1527(e)(1).  Here, the combination of objective medical evidence, physicians'

opinions and Plaintiff's testimony constitute substantial evidence.  Cf. Diaz v.

Shalala, 59 F.3d 307, 315 (2d Cir. 1995).  In determining Plaintiff is not disabled,

the ALJ properly consulted the administrative record, including: (1) Dr. Hughes'

March 2003 assessment of Plaintiff, which indicated Plaintiff could walk for four

hours and lift ten pounds at a time; (2) the results of Dr. Lewis' requested medical

exams, such as MRIs, an EMG, and a nerve conduction study, showing no

significant impairments; (3) an April 2007 consultative medical

examination performed by Dr. Meng showing some mild limitations in pushing,

9

pulling, standing, walking, and climbing stairs, and moderate limitations with bending, extension, twisting, and heavy lifting; (4) Plaintiff's own testimony regarding his ability to run the pizza parlor and lift thirty pounds; and (5) a July 2007 DDS State agency medical consultation indicating Plaintiff was capable of sitting, standing and/or walking for about six hours in an eight-hour workday. Moreover, the ALJ properly consulted the Medical-Vocational Guidelines to determine Plaintiff is not disabled under Medical-Vocational Rule 201.28/202.21.

II.   **Plaintiff's Treating Physician Was Not Entitled to Controlling Weight.**

Plaintiff argues that the ALJ failed to give controlling weight to the opinions of his treating physician, Dr. Lewis, who repeatedly opined that Plaintiff was disabled.  Under the treating physician rule, a treating source on the nature and severity of an impairment will receive controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record.  See 20 C.F.R. § 404.1527(d)(2).  If a treating source is not given controlling weight, the Commissioner must apply the following factors when considering the physician's opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors.  See id. at (i)-(ii), (d)4-6.  The ALJ is required to provide good reason for the weight it

10

accords to the treating source's opinion.  See Snell, 177 F.3d at 133-34 (citing

Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)); 20 C.F.R. § 404.1527(d)(2).

The Commissioner considers physicians' data; however, the conclusion of

whether a disability exists is reserved to the Commissioner.  See Snell, 177 F.3d

at 133.  A physician's opinion of Plaintiff's disability may be considered, but it is

not determinative on its own.  See id.  "'While the opinions of a treating physician

deserve special respect,...they need not be given controlling weight where they

are contradicted by other substantial evidence in the record.'"  See Rebull v.

Massanari, 240 F. Supp. 2d 265, 273 (S.D.N.Y 2002) (quoting Veino v. Barnhart,

312 F.3d 578, 588 (2d Cir. 2002)).  Moreover, "'[g]enuine conflicts in medical

evidence are for the Commissioner to resolve.'"  See id.; see also Diaz, 59 F.3d

at 314; Monguer v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (citations

omitted).

In the case at hand, the ALJ properly granted little weight to Dr. Lewis'

assessment of Plaintiff's disability because it was inconsistent with the

preponderance of the medical records and Dr. Lewis' own reports.  (Tr. 12).  Dr.

Lewis' opinion was inconsistent with the objective medical evidence.  As

previously indicated, the ALJ determined as of March 2, 2005, Plaintiff made a full

recovery when considering Dr. Lewis' opinion that the fusion is solid.  After

Plaintiff's next visit to Dr. Lewis, Dr. Lewis wrote on April 12, 2005 that Plaintiff

was "getting along much better" and physical therapy had resolved the thoracic

pain.  He also agreed to increase the amount of weight Plaintiff was lifting in physical therapy so that he could return to work.  (Tr. 139).

After indicating Plaintiff was getting along well and could increase the amount of weight he was lifting, Dr. Lewis stated Plaintiff should continue on disability despite MRIs and x-rays showing little to no impairment.  For example, on August 22, 2005, Dr. Lewis wrote that a CT scan showed good fusion, and an MRI showed "very little subtle abnormality but no significant findings such as significant disc herniation."  (Tr. 137-38).  Despite this finding, Dr. Lewis recommended that Plaintiff continue on total disability.  Id.  Moreover, on October 11, 2005, Dr. Lewis wrote the results of an MRI scan were unremarkable and the fusion looked normal.  (Tr. 136).  After indicating the fusion looked good and there were no further surgical options for him, Dr. Lewis referred Plaintiff to a holistic pain management evaluation.  Nevertheless, Dr. Lewis recommended that Plaintiff should remain on total disability.  After several other tests were performed, Dr. Lewis continued to recommend that Plaintiff remain on total disability.

In September 2007, Dr. Lewis prepared an RFC assessment pertaining to the time period of February 2, 2004 through September, 11, 2007, where he opined that Plaintiff had numerous limitations in his work capabilities.  The ALJ specifically gave little weight to that assessment because it was inconsistent with the fact that Plaintiff was actually working at the time the RFC assessment was

12

completed.  Dr. Lewis' September 2007 RFC assessment, performed five months

outside the claimed period, indicated Plaintiff was unable to: sit for more than ten

to fifteen minutes before needing to get up; stand for more than thirty minutes

before needing to sit down or walk around; and walk more than two city blocks

without rest or severe pain.  Moreover, Dr. Lewis' RFC assessment indicated

Plaintiff could sit, stand and walk for less than two hours in an eight-hour workday

and that Plaintiff was able to frequently lift less than ten pounds, occasionally lift

ten pounds, and never lift twenty pounds.  He also noted Plaintiff could rarely

twist, stoop, crouch, climb ladders and stairs and would likely be absent from

work more than four days per month as a result of Plaintiff's impairments.  (Tr.

177-80).  Yet, since April 2007, and continuing thereafter, Plaintiff had been

running his own pizza business.  Thus, Dr. Lewis' September 2007 RFC

assessment was contradicted by the very fact that Plaintiff was working at the

time, and the ALJ properly disregarded Dr. Lewis' conclusion.

In contrast to Dr. Lewis' RFC assessment, on April 19, 2007, a consultative

medical examination by Dr. Meng indicated Plaintiff had mild limitations with

pushing, and pulling due to a back condition.  (Tr. 149-52).  Dr. Meng further

noted Plaintiff's upper extremities had no limitation, but Plaintiff had moderate

limitations with bending, extension, twisting, and heaving lifting.  Next, a DDS

State agency medical consultant performed an RFC assessment of Plaintiff in

July 2007, which indicated Plaintiff could: occasionally lift twenty pounds,

frequently lift ten pounds; "stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday;" and "sit (with normal breaks) for a total of about six hours in an eight-hour workday."  He also noted that Plaintiff's push and pull was unlimited and that Plaintiff had occasional postural limitations, such as climbing stairs, balancing, stooping, kneeling, and crouching.  (Tr. 164-69).  Moreover, the medical consultant noted Plaintiff's statements that he can only stand, walk and sit for up to thirty minutes did not appear consistent with the medical records on file.

The ALJ also considered other evidence, including MRI results, an EMG, a nerve conduction study, and Plaintiff's own statements, all of which showed no significant abnormalities and appeared inconsistent with Dr. Lewis' assessment. Although these assessments occurred after Plaintiff's claimed period of disability expired, there appears to have been no change in his medical condition from early 2007, when Plaintiff claims he was still disabled, to the April and July 2007 assessments showing that he was not.

In sum, although the ALJ considered the opinion of Plaintiff's treating physician, pursuant to 20 C.F.R. § 404.1527(d)(2), it was not entitled to controlling weight because it was inconsistent with other substantial evidence. Moreover, the ALJ satisfied his duty to provide good reason for not giving controlling weight.  See Snell, 177 F.3d at 133-34 (citing Schaal v. Apfel, 177 F.3d 496, 505 (2d Cir. 1998)); 20 C.F.R. § 404.1527(d)(2).

14

III.   **No Duty to Recontact Plaintiff's Treating Physician.**

Alternatively, Plaintiff argues the ALJ should have recontacted Dr. Lewis to explain his September 2007 RFC assessment.  Under 20 C.F.R. § 416.912(e), the ALJ has a duty to recontact a physician if Plaintiff is represented by counsel and if the evidence from the treating physician is inadequate or if another medical source is inadequate to determine if Plaintiff is disabled.  See 20 C.F.R. § 416.912(e).  However, when "there are no obvious gaps in the administrative record and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  See Rosa v. Callahan, 168 F.3d 72, 79, n.5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).  Moreover, "'[g]enuine conflicts in the medical evidence are for the Commissioner to resolve,'" and reasonable discretion in assessing the adequacy and completeness of the administrative record prevents endless recontacting of physicians.  See Rebull, 240 F. Supp. 2d at 272-73 (citations omitted).

Here, the administrative record contains medical records dating from March 2003 through February 2009 with no apparent gaps.  Furthermore, Plaintiff concedes there are no medical records missing in the administrative record. Plaintiff argues the ALJ had a duty to recontact Dr. Lewis if the medical records were unclear; however, Dr. Lewis' opinion was not unclear but rather inconsistent with the objective medical evidence.  Plaintiff correctly indicates there is a duty to

develop the administrative record; however, when such as here, the record is complete and clear, the ALJ does not need to recontact physicians.  See Rebull, 240 F. Supp. 2d at 272.

The ALJ had substantial evidence to reach the conclusion that Plaintiff was not disabled and therefore had no reason to recontact Dr. Lewis for additions to the medical record.

## IV.   Credibility Determination.

Next, Plaintiff argues the ALJ failed to properly assess Plaintiff's subjective complaints of pain and improperly concluded that Plaintiff was not credible. Pursuant to 20 C.F.R. § 404.1529(a), the ALJ considers Plaintiff's symptoms, including pain and the extent to which Plaintiff's "symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence."  In considering subjective complaints of pain, the ALJ is entitled to "evaluate plaintiff's credibility, and arrive at an independent judgment regarding subjective symptoms in light of the medical findings and other evidence regarding the true extent of alleged symptoms."  See Eldred v. Comm'r of Soc. Sec., 250 F. Supp. 2d 282, 291 (W.D.N.Y. 2003) (citing Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984)); SSR 96-7p, 1996 WL 374186 (July 2, 1996).  Moreover, the duty to appraise a witness' credibility is reserved for the Commissioner and not the district court.  See Serra v. Sullivan, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991)

(citations omitted).  Because the ALJ observes Plaintiff's demeanor, the Court defers issues of credibility to the ALJ.  See id.; Piertrunti v. Dir., Officer of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2nd Cir. 1997) (citations omitted) ("credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable'").

The ALJ found Plaintiff's statements about the "intensity, persistence, and limiting effects" of his symptoms were not credible because they were inconsistent with the RFC finding of light and sedentary work.  The ALJ did not err in determining Plaintiff's subjective complaints were not credible.  As indicated by the ALJ, in March 2007, Plaintiff stated he could not bend, sit, walk, lift, or stand for long periods.  One month later, in April 2007, Plaintiff claimed to have several restrictions in his daily activities, such as "remembering/paying attention, slower personal care, lack of mobility, pain, limited lifting, and standing/walking/sitting/climbing stairs/kneeling/squatting."  (Tr. 88-98).  Yet, during the same month, Plaintiff had already opened his pizza parlor, where Plaintiff continued to work as of the date the action was commenced. Furthermore, during the hearing, despite Plaintiff's continued subjective complaints of pain, Plaintiff indicated he was able to run the pizza parlor, including performing such duties as: supervising employees; dealing with customers over the phone; and ordering supplies.

17

The ALJ properly found Plaintiff's subjective complaints of pain and physical limitations were unsupported by objective medical evidence and by the very fact that Plaintiff was working despite those limitations.

## V.   The ALJ Did Not Err in Determining Plaintiff Could Perform Other Work in the National Economy.

Finally, Plaintiff asserts it was error for the ALJ to fail to obtain the opinion of a vocational expert.  Under step five of the analysis, the ALJ must determine if Plaintiff can perform work in the national economy.  See 20 C.F.R. § 404.1560(c). To do so, the ALJ must consider Plaintiff's RFC, age, education, and work experience in addition to the Medical-Vocational Guidelines under 20 C.F.R. § 404, Subpart P, Appendix 2.   When, such as here, Plaintiff can perform all or substantially all of the exertional demands of a given level or exertion, the Medical-Vocational Guidelines direct a finding of "not disabled."  See Bapp, 802 F.2d at 605; SSR 83-11, 1983 WL 31252 (1983).

It is only when a plaintiff's nonexertional impairments "'significantly limit the range of work permitted by his exertional limitations'" that the ALJ must require the Commissioner to consider the Medical-Vocational Guidelines as a framework in addition to a vocational expert's testimony.  See Bapp, 802 F.2d at 606.  A nonexertional limitation is a limitation caused by Plaintiff's impairment that prevents Plaintiff from meeting the demands of the job or other strength

18

demands.  See 20 C.F.R. § 404.1569a(c)(1).  Examples of nonexertional

limitations include difficulty in seeing or hearing or difficulty in performing

manipulative or postural functions, such as reaching, stooping, climbing, crawling,

or crouching.  See id. at (v)-(vi).

In applying the Medical-Vocational Guidelines, Plaintiff is a younger

individual, aged 18-44, with a high school degree or more, and with skilled or

semi-skilled previous work experience.  Accordingly, the finding of "not disabled"

is directed by Rule 202.28/202.21, as Plaintiff is able to perform sedentary and

light work.  See 20 C.F.R. Part 404, Appendix 2.  Plaintiff claims to have

nonexertional limits in twisting, stooping, crouching, squatting, climbing ladders

and stairs, and in doing repetitive reaching, handling or fingering.  However,

those nonexertional limits are based upon Plaintiff's own subjective complaints,

which the ALJ found not credible, and upon Dr. Lewis' unsupported conclusion,

which the ALJ rejected as inconsistent with other medical evidence in the record.

Because there was no indication that Plaintiff's nonexertional limitations "severely

limit the range of work permitted by his exertional limitations," the ALJ properly

concluded the Medical-Vocational Guidelines directed a finding of "not disabled."

## **CONCLUSION**

For the reasons stated, the Court grants the Commissioner's motion for judgment on the pleadings (Dkt. No. 6) and denies Plaintiff's cross-motion (Dkt. No. 7.).  The Clerk of the Court shall close this case.

SO ORDERED.

*s/ Richard J. Arcara*

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: July 14, 2011